## Third Department, December, 1937.
### (December 29, 1937.)

Esther L. Allen, as Administratrix, etc., of Le Roy H. Allen, Deceased, Respondent, v. Thomas Ennis, Defendant, Impleaded with Keller Motor Car Company, Appellant.

Appeal by the defendant Keller Motor Car Company, as Keller Motor Co., Inc., from a judgment of the Supreme Court, entered in the Madison county clerk's office on March 2, 1937, and also from an order entered in said clerk's office on March 9, 1937.

Appeal from a judgment of the Trial Term of the Supreme Court, upon a verdict, entered in the office of the clerk of Madison county on March 2, 1937. The defendant corporation conducted an agency for the sale of Ford cars, and employed a number of sales agents on a commission basis with weekly advances, of whom the defendant Ennis was one. The deceased Allen was a taxi driver, and a prospective purchaser of an automobile. Allen accompanied Ennis while the latter demonstrated a Ford car. Upon approaching a sharp curve in the highway, without following the curve, the car was driven substantially in a straight line over to and on the left side of the road, and on the left shoulder, for a distance of 250 to 300 feet, into a highway fence and into a deep ditch. Five of the fence posts were broken off, the car demolished, and Allen was found on the floor in the back of the car, so badly injured that he became completely paralyzed at once, and died from his injuries two days later. There was no eye witness, except that one person saw the car turn over, but knew little else about the facts. The defendant Ennis did not answer in the action and was not produced as a witness. The corporation defended chiefly on the grounds that there was no proof that Ennis was driving; that there was no proof of negligence; that the corporation did not own the Ford, but that it was owned by Ennis.

The facts mentioned and observed by the witnesses after the accident provided substantial foundation for the inference that the deceased was riding on the back seat of the car, and that Ennis was driving. Likewise there was evidence of such facts as would support the inferences that the car was driven at an excessive rate of speed, on the wrong side of the road for a long distance, and was not during that time in the control of the driver. The defendant offered no affirmative proof of contributory negligence, which, in any event, was a question of fact for the jury. The car in question was licensed in the name of the corporate defendant, and while so licensed had been operated for more than a month by its employee in its business. There was convincing testimony that the corporate defendant carried on a plan for the *apparent* sale to its agents of the cars used by them for demonstration, and for the registration of these cars in its own name, and they were in fact operated under its license and with its number plates thereon, until sold by the agents. Upon these facts the corporate defendant was not in a position to deny its ownership. (*Shuba* v. *Greendonner*, 271 N. Y. 189.)

Judgment and order affirmed, with costs.

Rhodes, McNamee, Crapser and Heffernan, JJ., concur; Hill, P. J., dissents, with an opinion.

HILL, P. J. (dissenting). Plaintiff's intestate came to his death through injuries received when an automobile in which he and the defendant Ennis were riding left the highway, turned over and came to rest at the bottom of a ditch. The car had been traveling west, presumably on the north side of the highway, but it struck and broke off five of the concrete posts which in part comprised a guard fence on the south side of the highway and turned over into the adjacent ditch. Ennis was not sworn on the trial. There is no direct proof as to whether the car was being driven by Ennis, the agent for the corporate defendant automobile vendors, or by the decedent Allen, who was a prospective purchaser. Plaintiff relied upon the inference that as the car belonged to the corporate defendant it was under the control of its agent, and upon the evidentiary fact that Allen was found after the accident paralyzed on the floor of the car back of the front seat. I am unable to see much connection between this fact and the identity of the driver, as the car had turned completely over.

No witness testified to the speed of the car, or saw it except the wife of another motorist who was some hundred feet ahead and she only observed it when it was turning over in the air. The highway was paved with two nine-foot strips of concrete. There was a curve easterly from the guard posts, the arc was not shown, but from the pictures and the evidence of the photographer, it began about 525 feet away and continued apparently for 350 to 400 feet. The only theory of negligence which the plaintiff advances is that Ennis was driving the car at so great a speed that he was unable to negotiate the curve, went along the south shoulder 250 or 300 feet and against the guard posts and into the ditch. The only fact upon which plaintiff relies to sustain this inference is that there were marks upon the south shoulder of the road. A State trooper said concerning these, " No marks on the concrete, no. There were marks on the wide shoulder of the road, from a point east of where this car rested in the ditch — leading to a point where the car laid there in the ditch. * * * I didn't measure them that day, I would call them somewhere between 250 and 300 feet." The husband of the witness who saw the car turning in the air testified: " Q. Did you observe any marks on the road, shoulder?. A. There was. I just happened to look back from the posts and you could see where the tires skid. Q. How far back would you estimate these marks began? A. Probably 200 feet or more."

We start with the not very strong presumption that Ennis was driving the car as Allen, the prospective purchaser, in determining whether the car drove in a satisfactory manner, could well have been the operator. Then we are required to infer because of the curve and the meager evidence concerning marks on the south shoulder, that Ennis, an experienced driver and with full knowledge of the curve, on this dry, unobstructed pavement, had attained a speed so great that from a point 500 feet away where the curve began he was unable to reduce speed or get the car under control sufficiently to avoid striking the guard posts.

*Galbraith* v. *Busch* (267 N. Y. 230) dealt with an automobile that " suddenly swerved from the highway and crashed into a tree." Here we are dealing with a condition where nothing is known definitely as to the suddenness of the turn or the cause thereof unless we stretch the inference arising from the " marks " on the shoulder to mere speculation. It is said in the opinion in the *Galbraith* case,

" The evidence, though unexplained, cannot possibly lead to an inference that the accident was due to lack of care in the operation of the automobile, for the probability that it occurred from a break in its mechanism is at least equally great. All that the evidence shows is that the accident may have occurred from any one of many causes, including, perhaps, negligence in operation." And in *Tortora* v. *State of New York* (269 N. Y. 167, 170), " When an automobile swerves and leaves the road for no definitely assignable reason, it is altogether possible that the accident was due to either of several causes, the failure of the steering gear or a lapse on the part of the driver. Both frequently happen * * *. In all such cases the balance of probabilities between causes which entail liability and others which do not is equal enough so that an inference of fact which entails liability is the result of mere speculation."

The evidence does not establish defendant's negligence. (*Spreen* v. *McCann*, 264 N. Y. 546; *Lahr* v. *Terrill*, 274 id. 112; *Higgins* v. *Mason*, 255 id. 104.)

I favor a reversal on the law and a dismissal of the complaint.